ESTATE of Harold A. HOFFMAN, by Administrator Connie E. Hoffman, Plaintiff,

v.

NABISCO, INC., Defendant.

No. 77 Civ. 3966.

United States District Court, S. D. New York.

Jan. 12, 1978.

Miskin & Sutton, New York City, by Paul J. Sutton, New York City, of counsel, for plaintiff.

Casey, Lane & Mittendorf, New York City, by Alan R. Wentzel, New York City, of counsel, for defendant.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

The Estate of Harold Hoffman, plaintiff herein, has brought this action seeking an injunction and damages for breach of contract, trademark violations and unfair competition. The action was originally brought in New York State Supreme Court but removed here by defendant Nabisco, Inc. Defendant now moves to dismiss the first and fourth causes of action of the complaint for failure to state a claim upon which relief can be granted. Plaintiff opposes the motion and cross-moves for summary judgment on its first claim.

Plaintiff's first cause of action seeks an amount of $90,588 allegedly due under a contract entered into between Harold Hoffman and Nabisco. Nabisco claims that the amount due is, in actuality, $40,588 and that it is willing to pay that amount into court upon dismissal of the claim. Plaintiff, by cross-motion, asks for summary judgment on the contract, which is made part of the pleadings, claiming that its validity has been conceded. Nabisco, however, asserts that the validity of the contract is not conceded and that, in any case, ambiguities present in the contract preclude summary judgment.

The contract which is the subject of the first motion was entered into on June 24, 1970. By its terms Nabisco acquired certain rights in Hoffman's patented high protein food process and the product thereof, called "VPC". In consideration of these rights, Nabisco was to make payments to Hoffman at six-month intervals. Plaintiff and Nabisco now dispute whether payment was to precede or succeed the applicable six-month period. Both agree that $25,000 was tendered at the time the contract was executed. However, while plaintiff characterizes this as a down payment only, with actual payment for the first six months to occur on December 24, 1970, Nabisco calls it a first payment and proof that payments were made in advance of the applicable six-month interval. Plaintiff insists that payment was due at the end of each inter-

val. Thus, according to plaintiff, when Nabisco terminated the contract in February 1977, as it had a right to do, it allegedly owed accrued payments to December 1976, plus an additional amount, prorated to the effective date of termination.

Both parties point to the language of the contract in support of their respective positions. Article V concerns payments to be made by Nabisco. The relevant sections read as follows:

"V. *Payments by Nabisco*

Simultaneously with the execution of this Agreement, Nabisco has paid to Principal the sum of TWENTY–FIVE THOUSAND ($25,000.00) DOLLARS, receipt of which is hereby acknowledged by the Principal. In addition to said payment Nabisco promises and agrees to pay to the Principal the following amounts while this Agreement remains in effect:

1. Nabisco agrees to pay at six month intervals commencing six months from the date of the signing of this Agreement, either (1) five additional payments of $25,000.00 each so that a minimum total of $150,000.00 will have been paid to Principal during the first three years this Agreement is in effect, *or*

(2) five additional payments each equal to the amount of Royalty as outlined below in Paragraph 8 which would be due for the applicable six month period, whichever is greater. In the event National Distribution does not commence during the fourth year following the signing of this Agreement, Nabisco agrees to increase the six month interval payments from $25,000.00 to $50,000.00 until National Distribution is achieved.

2. (*DELETED*) (SIC)

3. During the first three years National Distribution has been attained Nabisco agrees to pay Principal in equal quarterly installments a total of

(a) A minimum of $250,000 each year, or

(b) The Royalty as outlined below in Paragraph 8, whichever is greater.

4. During the fourth (4th), fifth (5th), sixth (6th) and seventh (7th) year of Na-

tional Distribution Nabisco agrees to pay Principal in equal quarterly installments a total of

(a) A minimum of $300,000.00 each year, or

(b) The Royalty as outlined below in Paragraph 8, whichever is greater.

5. Notwithstanding the foregoing, at the expiration of the seventh (7th) year of National Distribution and if Nabisco has met all payment obligations outlined in Article V relative to scheduled payment, minimum payments or Royalties, Nabisco's obligation to make any further payments to the Principal shall cease and terminate and the Principal shall thereupon assign and transfer to Nabisco the Patent Application and any patents issued thereunder including any foreign patents obtained in accordance with the provisions of Article VII (title to which has been retained by the Principal solely as security for Nabisco's performance of its obligations under the Agreement.)

6. It is understood and agreed that Nabisco's obligation to make any payments outlined in Article V, Paragraphs 2 to 4, shall not apply with respect to the year, if any, in which falls the effective date of any notice of termination which Nabisco may exercise as set forth in Paragraph (a) of Article VIII of this Agreement. In this event, Nabisco agrees to make minimum payment on a prorata basis based on the effective date of notice of termination."

It appears from this excerpt that the coverage of the payments is susceptible of either plaintiff's or defendant's interpretation. I therefore turn to the termination clause to see whether it disposes of the controversy. Article VIII, section (a) provides:

"VIII. *Rights and Options of Nabisco*

(a) It is understood and agreed that after Nabisco has investigated the representations and warranties referred to in Article I hereof, it will proceed with due diligence to investigate the possibility of developments and improvements in the

VPC, will consumer test the said products developed and will conduct and evaluate test marketing thereof to the extent Nabisco deems appropriate prior to committing itself to National Distribution. Moreover, it is further understood and agreed that Nabisco, at its own discretion may at any time, after the date of this Agreement determine that the future development, manufacture, sale and distribution of VPC or other products coming within the scope of the claims of the Patent, is not in its corporate best interest. In that event, Nabisco may terminate this Agreement by written notice to the Principal.

Such termination notice may be given at any time in accordance with the following schedule:

(1) For the first six month payment 30 days before date payment is due.

(2) For the second six month payment 60 days before date payment is due.

(3) For subsequent six month payments 90 days before date payment is due in which event Nabisco will be obligated to make payment for any succeeding six month interval the running of which will be curtailed by the notice of termination.

After the expiration of said three year period, such notice shall be given 90 days before its effective date in which event Nabisco will be obligated to make payments accrued on a prorata basis as specified in Article V (6) to the last day of the notice period."

Plaintiff argues that the language of this article, which provides, *inter alia,* that notice of termination for the first six month period must be made "30 days before date payment is due," makes it clear that the parties intended payment to follow the six-month intervals since it would be impossible to terminate 30 days before the first payment if that payment were made at the signing of the contract. While it is true that as to later payments the required notice of termination was somewhat altered, plaintiff's argument is well taken for the light that it sheds on the apparent intent of the parties. Although this section provides some evidence that the contract should be interpreted as plaintiff perceives it, I find that this alone is a slim reed upon which to rest summary judgment. Moreover, defendant, in opposing the motion, has questioned the validity of the contract by asserting that Hoffman's patent was invalid, a charge which, if proved, could demonstrate a failure of consideration. Accordingly, I must at this time deny both the motion to dismiss and the motion for summary judgment on the first count.

Nabisco has also moved to dismiss the fourth cause of action which alleges that Nabisco's failure to disclose to the United States Patent and Trademark Office Hoffman's prior rights in the trademark "VMR" which it registered for use in sales of VPC, constituted a fraud upon the Patent and Trademark Office. Plaintiff seeks an order directing cancellation of the trademark registrations. The complaint alleges that in May 1971 Hoffman and Nabisco agreed that the latter could register VMR in its own name, subject to the right of reversion to Hoffman in the event that Nabisco terminated the agreement (Complaint at ¶¶ 38–39, and Exhibit E). Plaintiff charges that Nabisco has intentionally and knowingly continued to use the trademark VMR, notwithstanding the contract's termination, causing injury to plaintiff's good will and business reputation. Registration of the trademark in Nabisco's name will allegedly "interfere with plaintiff's business and trade . . . dilute the distinctiveness of plaintiff's trademark and . . . lessen the value of plaintiff's good will therein." (Complaint ¶ 73).

Nabisco attacks both the sufficiency of the allegations of fraud and plaintiff's standing to bring the action for cancellation. Since it appears that plaintiff has failed to allege the requisite damage to establish its standing to seek cancellation, I need not decide whether plaintiff has sufficiently pleaded fraud on the patent office to withstand defendant's attack on the complaint.

In order to have standing to cancel a trademark on grounds of fraud "a petitioner must allege that it is using the

same or a similar mark for the same or similar goods. . . ." *Yard-Man, Inc. v. Getz Exterminators,* 157 U.S.P.Q. 100, 105 (TMT & App.Bd.1968); *See also Crown Wallcovering Corp. v. Wall Paper Manufacturers,* 188 U.S.P.Q. 141 (TMT & App.Bd. 1975). As Nabisco correctly points out, the complaint is completely devoid of allegations that the estate is carrying on the business of Harold Hoffman, or that it is using the mark in any other business. In short, no facts are alleged to support plaintiff's suggestion that Nabisco's registration will cause the type of injury that gives rise to standing to cancel a registered trademark.

Accordingly, defendant's motion to dismiss count one is denied, as is plaintiff's motion for summary judgment on the same count. The motion to dismiss count four is granted.

IT IS SO ORDERED.